WELDON M. HARLOE

*v.*

EDITH PECK HARLOE

(No. 9787)

Submitted April 16, 1946.  Decided May 14, 1946.

*Walter V. Ross, Joseph C. Shaffer, Jr.,* and *Walter G. Burton,* for appellant.

*Bailey & Shannon,* for appellee.

FOX, JUDGE:

On the 28th day of August, 1943, Weldon M. Harloe instituted his suit for divorce against Edith Peck Harloe, in the Circuit Court of Mercer County, and in his bill prayed for an absolute divorce, and the custody of the children of the marriage sought to be dissolved. Defendant, Edith Peck Harloe, appeared in said suit and filed her answer, and such proceedings were had in the cause as that on December 22, 1943, a decree was entered awarding to plaintiff an absolute divorce, and the care and custody of the four infant children of the marriage, until the further order of the court, with certain rights to defendant to visit said children.

Shortly after the entry of said decree of divorce, Weldon M. Harloe was inducted into the military service of the United States, and remained there until some time subsequent to May 4, 1945. During his absence from this State, Edith Peck Harloe filed her petition in said cause, in which she sought the custody of one of said children. In that proceeding an attorney appeared in the cause for Weldon M. Harloe, in what he termed a special appearance, and informed the court that his client was then in the military service of the United States, sug-

gested a stay of proceeding, and the same was stayed for a time. Thereafter, on August 17, 1944, an order was entered in the cause directing that the custody of one of said children, Sarah Elizabeth Harloe, be awarded to the petitioner. This order was suspended for a period of ninety days, but no appeal was taken therefrom. Thereafter, Edith Peck Harloe filed another petition, in which she sought the custody of two of said children, Walter Weldon Harloe and William Peck Harloe, but no action appears to have been taken thereon. At May rules, 1945, the said Edith Peck Harloe filed another petition, in which she asked for the custody of the two children mentioned above, and on April 27, 1945, there was issued, out of the office of the Clerk of the Circuit Court of Mercer County, a summons, in which Weldon M. Harloe was required to appear before the Judge of the Circuit Court of Mercer County, at rules to be held on the first Monday of May following, to answer a petition in chancery exhibited against him in said court, praying for the custody of the infant children, whose custody had theretofore been granted to him by said court in the cause in which the petition was filed, designating said children as Walter Weldon Harloe and William Peck Harloe. This summons was served on Effie Harloe, as attorney in fact for Weldon M. Harloe, on May 4, 1945, and no other or further service thereof was had on him. To this summons or writ, the said Weldon M. Harloe filed his plea in abatement, in which he raises the question of the effect of service of process on his attorney in fact, who happened to be his mother, setting up the fact that he was a *bona fide* resident and citizen of Mercer County, residing in Matoaka in said county, and temporarily stationed in the State of California, by reason of his military service in the armed forces of the United States, and that he desired personally to contest the case, but was unable to do so at that time because of his military service. To this plea in abatement Edith Peck Harloe filed her answer, in which she admits the fact of her former husband's service in the military forces, and avers that service as to him had

been obtained by delivery of a copy of the summons in the proceeding to his attorney in fact, and attached to said answer what purports to be a true copy of the power of attorney, under which it is contended good service of said summons was obtained by delivery of a copy thereof to the attorney in fact named therein. The clause in the power of attorney, granting powers which, it is contended, authorized the service of process on the attorney in fact reads as follows: "To institute, prosecute, defend, compromise, arbitrate, and dispose of legal, equitable, or administrative hearings, actions, suits, attachments, arrests, distresses or other proceedings, or otherwise engage in litigation in connection with the premises". The power of attorney was duly executed and recorded in Mercer County. On June 18, 1945, the circuit court entered an order filing the answer to the plea in abatement and holding as follows: "And the matters arising upon the plea in abatement filed herein are overruled and this cause is continued generally." In September, 1945, the matter was heard, evidence introduced on behalf of petitioner, and she was accorded the custody of the two children mentioned above during the annual school period of nine months, and their custody during the three summer months was awarded to their father, Weldon M. Harloe. There was no appearance on the part of Weldon M. Harloe at the hearing, he electing to rely upon his plea in abatement. He prosecutes this appeal on the theory that the order of the circuit court aforesaid was void for lack of jurisdiction to hear and determine the case, for the reason that no legal notice of the said petition had been given him.

The power and jurisdiction of the court, where due and proper notice is given, to enter a decree concerning the care, custody, education and maintenance of the children of divorced persons, in cases such as is here presented, is not questioned. Code, 48-2-15, as amended by Chapter 35, Acts of the Legislature, 1935, provides that: "* * * the court may also from time to time afterward, on the petition of either of the parties, revise or alter

such decree concerning the care, custody, education and maintenance of the children, and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require." The circuit court properly applied the principle that, in any case involving the custody of children, their interest was paramount; but that merely provides a rule for the guidance of courts, and presupposes that the parties interested have had reasonable notice to appear in court and present any matters bearing upon the question in issue. We do not understand that a trial-court, which has entered a decree of divorce and adjudged the custody of children, can thereafter arbitrarily, and without notice, enter an order in which the custody of the children is changed. To us that appears to deny to a litigant the benefit of constitutional provisions which insure to everyone due process of law in any matter affecting his or her interest. Our Constitution provides: "No person shall be deprived of life, liberty, or property without due process of the law, and the judgment of his peers", and due process of law requires notice and opportunity for hearing. That notice need not necessarily be personal service, but it must be notice of some character provided by law, either personal service, or by delivery of a copy to a member of his family over sixteen years of age, or posting, or by publication. While Section 10, Article III of our Constitution, refers only to deprivation of life, liberty, or property, we have held that these provisions are broad enough to embrace all character of rights, whether or not they may technically be called property rights. *Simpson v. Staunton,* 119 W. Va. 235, 193 S. E. 64. In that case we discussed at length the necessity for notice before hearing. We cannot bring ourselves to believe that in so important a matter as that affecting the custody of children, a parent does not have the right to notice before his or her right thereto can be changed by any court, under any circumstances, even though the statute quoted does not specifically provide that notice must accompany or precede the filing of a petition. While a petition is required to

be filed in the suit in which the divorce was granted, and, it may be contended, that the parties to a divorce proceeding having been served with the process initiating the suit, may be considered as having notice of any procedures which may follow therein, yet we adhere to the view that, in any proceeding by a circuit court following a decree of divorce, whether the same relates to alimony, or the custody, education and maintenance of children, there must be reasonable notice, in some form provided by the statute, of the filing of any petition or other pleading by which the terms of the decree relative to custody is sought to be changed.

Counsel for Edith Peck Harloe do not seem to question the requirement of notice. They attempted to give notice, through service of the summons aforesaid. Instead of following the methods which might have been open to them to obtain service of said summons, they elected to serve the same on an attorney in fact, and place their sole reliance upon the sufficiency and legality of that service. The clause of the power of attorney on which they rely has been quoted above. That clause confers upon the attorney in fact power to defend, settle, and compromise suits, and generally to protect the interests of the person executing the power of attorney; but the powers granted to the attorney in fact were intended to enable her to protect the interests of the grantor of the powers. Clearly, the paper was executed for the purpose of placing the attorney in fact in position to protect the party who executed it. We do not think it should be construed to include the right, on the part of the attorney in fact, to embroil the maker thereof in litigation in which vital interests might be conclusively determined against him. If this were true, a person in the military service, or absent for a long period of time, might have his property and other rights absolutely destroyed by the recovery of personal judgments against him, a decree of divorce, in which the custody of his children could be determined to the prejudice of his rights, and in many other ways that might be mentioned. For

this reason, we are of the opinion that service of the summons issued at the date of the filing of the petition, on which the decree under attack was entered, was not legally had on Weldon M. Harloe, and did not warrant the court in entering any order affecting the custody of the children involved in this proceeding.

We therefore reverse the order of the Circuit Court of Mercer County,. and remand the case to that court for any further proceedings that the petitioner may be advised to take.

*Reversed' and remanded.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the reasoning expressed and the result reached in the majority opinion.

The majority opinion refers to a plea in abatement filed by the husband, Weldon M. Harloe. An examination of this plea discloses that it does not give petitioner a better writ, and thus lacks one of the essentials of a plea in abatement. The plea is dilatory in that it denies jurisdiction of the court to modify its former decree with reference to the custody of the children, and should be treated with the strictness generally accorded such a plea.

The majority opinion reasons by inference that to hold the service of the notice involved in this proceeding valid would be to permit the attorney in fact to "embroil" the respondent in litigation. Such statement is less than accurate. Respondent embroiled himself in litigation when he brought his suit for divorce. Although the suit had ended, so far as it affected the marital status of petitioner and respondent, nevertheless, the court had continuing jurisdiction with reference to the custody of the children of the marriage. To speak of embroiling in litigation over the care and custody of infants is to entirely lose sight of the beneficent purpose of the statute hereinafter quoted. Its purpose is to permit the control to rest in the court with as little notoriety as possible. The respondent was decreed custody subject to the power of the

court to alter its decree. That is all the right he had protected by due process or otherwise. .The trial court saw fit to exercise the power it is required by statute to exercise in a proper case. Its former decree was entered subject to its continuing power to do so. Respondent knew that when the decree of divorce was entered and now cannot complain that the continuing jurisdiction, subject to which that decree was entered, is invoked.

The pertinent part of Code, 48-2-15, as amended by Section 15, Chapter 35, Acts of the Legislature, 1935, reads in part as follows: "* * * upon decreeing the annulment of a marriage, or a divorce, the court may make such further decree as it shall deem expedient, concerning the care, custody, education and maintenance of the minor children, and may determine with which of the parents the children or any of them may remain; * * * and the court may also from time to time afterward, on the petition of either of the parties, revise or alter such decree concerning the care, custody, education and maintenance of the children, and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require. In any case where the divorce or the annulment is denied, if the parties are living separate and apart from each other, the court shall retain jurisdiction of the case for the purpose of determining with which of the parents the children or any of them may remain and of making such order or decree concerning the care, custody, education and maintenance of the minor children, or any of them, as to the court may seem proper and the benefit of the child or children may require; and such order or decree may from time to time afterward, on petition of either of the parties, be revised or altered, and a new order or decree made, as the circumstances of the parties or the needs of the children may require * * *."

In applying the statute just adverted to, this Court held in the case of *Settle v. Settle*, 117 W. Va. 476, 185 S. E. 859: "* * * the matter of the custody of children of estranged parents, whether divorced or not, remains in

the discretion of the chancellor under a continuing juris-
diction, and any arrangement he or the appellate court
may make pertaining to the custody of such children
may be changed by him from time to time as the circum-
stances may seem to require." The language of the
opinion in the *Settle* case is indicative that this Court ad-
hered to the common law theory that the State is guardian
of children of estranged parents, and in conformity with
that theory, this Court therein provided in some detail
for the children to remain with their mother from the
first of September until May thirty-first of each year,
and that the custody should be with the father during
the months of June, July and August.

Again in applying the statute quoted above, this Court
said in the case of *Crouch v. Easley,* 119 W. Va. 208, 209,
192 S. E. 690: "We are of the opinion that the portion
of 48-2-15 applying to suits where a divorce or an annul-
ment is granted, which authorizes subsequent changes in
the custody of the children, *ipso facto,* reserves in the
court entering the decree jurisdiction of the parties for
the purposes of the statute." *Settle v. Settle, supra,* ap-
plies the provisions of Code, 48-2-15, as amended,
whether there is a divorce or not.

In the case at bar there was a divorce. What is the
meaning of the language of this Court in the *Settle* and
*Crouch* cases? Undoubtedly, continuing jurisdiction of
the trial court of the subject matter and the parties ex-
ists in this proceeding if the statute and the principles
announced in the *Settle* and *Crouch* cases are properly
applied. In this proceeding the jurisdiction of the trial
court of the subject matter is not questioned, but juris-
diction of respondent is denied on the ground that a no-
tice was not properly served on him. On a petition to
modify a former decree as to the custody of a child
awarded in a divorce suit, it has been held that unless
there is an appearance to a petition, the petition should
be sent to rules for process to be issued thereon, and to be
matured for hearing; and, if no appearance is made

thereto and no process issued on the petition, the decree entered on the petition would constitute error and call for reversal of such decree. *Phillips v. Phillips,* 24 W. Va. 591. Appraising the *Settle* and *Crouch* cases in their relation to the *Phillips* case, the *Phillips* case seems irreconcilable with the *Settle* and *Crouch* cases. I am of opinion that the *Settle* and *Crouch* cases are in accord with the modern trend of decisions and state the sounder rule. Moreover, being the last expressions of this Court on the subject, the rule in those cases should be followed.

The majority opinion treats the question here involved in the same manner as if it were a notice to modify a decree for alimony. I do not think this position is tenable for the reason that Code, 48-2-13, provides, as a prerequisite for the allowance of alimony *pendente lite*: " * * * reasonable notice to the man * * *." No such provision is found in the part of Code, 48-2-15, as amended by Section 15, Chapter 35, Acts of the Legislature, 1935, with reference to the custody of children as that dealing with alimony *pendente lite,* expressly requiring notice.

A suit to make a divorce absolute subsequent to a decree of divorce *a mensa et thoro* required a petition or bill averring grounds for relief upon the usual process and proceedings at rules as prescribed by the usual rules of equity practice, and, in the matter of notice, a conformance to the statutes or provisions of the Code relating to suits in general. *Dixon v. Dixon,* 73 W. Va. 7, 79 S. E. 1016. A decree awarding alimony cannot be modified without personal service or notice to the opposing party in the absence of an appearance by him. *Marks v. Mitchell,* 90 W. Va. 702, 708, 111 S. E. 763. As heretofore pointed out, modification of a decree concerning alimony and modification of a decree respecting the custody of children are fundamentally different. And a like difference existed between the question here presented, and a suit to make a divorce from bed and board absolute.

The general rule with reference to notice of a petition for modification of a decree concerning custody of chil-

dren has been stated as follows: "In proceedings for the modification of orders, judgments, or decrees in divorce proceedings relative to the custody of minor children, it has been generally held that proper notice to the adverse party and an opportunity to be heard are required, whether provided for by statute or not." 76 A.L.R., page 253, Note. See 2 Nelson Divorce and Annulment, 2d Ed., Section 15.45, page 246. *Phillips v. Phillips, supra*, seems to indicate that notice on a petition to modify a decree for the custody of children must be remanded to rules for process. In view of the particular interest that the State, as universal guardian of its infant citizens, has in their welfare, a remand to rules for process would result in an unwarranted delay and is unnecessary. A simple notice without remand to rules seems to be sufficient, without rules being taken thereon.

The fact is to be borne in mind that the parties in a divorce proceeding under modern decisions and statutes have equal rights to the custody of their children and for that reason the cases that now arise are not governed by the same equitable principles as were the cases decided when the father had a paramount right. In this case the mother was deprived of a right—that of joint custody—and she was not seeking to take anything from her husband permanently. That is what continuing jurisdiction means.

The majority opinion invokes the due process clause of the Constitution. I do not think that in proceedings involving the modification of a decree concerning custody of children, a strict application of the due process clause is apropos. Considering the benevolent attitude assumed by the courts of this State toward the children of divorced or estranged parents, it takes little to satisfy the requirement of due process of law. It has been held: "The adverse party and the subject-matter under the circumstances of the case at bar must be viewed as within the jurisdiction of the court under the terms of the statute in question, and due process seems to require only that

the method of service prescribed shall be one reasonably calculated to give the defendant knowledge of the proceedings and an opportunity to be heard. This is the fundamental limitation * * *." *Franklin v. Bonner,* 201 Iowa 516, 207 N. W. 778, 781. In *Morrill v. Morrill,* 83 Conn. 479, 77 A. 1, it was held that notice to the adverse party of a petition for the modification of an order fixing the custody of children was not a condition on which the jurisdiction of the court rests, though reasonable notice of the contemplated action should be required as a measure of fairness. In states having statutes providing for continuing jurisdiction after a final decree for divorce, as is the case in this jurisdiction, it takes but little to meet the "due process clause" of the Federal and State Constitutions. Being founded on actual knowledge rather than service of a notice according to technical requirements provided for in original suits, actions and other proceedings, the service of notice of a motion to modify a decree with respect to the custody of a minor child on attorney of record is sufficient. *State v. First Judicial District Court of Ormsby County,* 61 Nev. 269, 125 P. 2d 723. A modification of a decree relating to the custody of infant children made without notice to one parent is sufficient to entitle the modified decree to full faith and credit in a jurisdiction to which a child has been unlawfully removed. *Burns v. Shapley,* 16 Ala. App. 297, 77 So. 447. See *Morrill v. Morrill, supra; Hersey v. Hersey,* 271 Mass. 545, 171 N.E. 815. In the case of *Clark v. Clark,* 107 Wash. 475, 182 P. 566, a case quite similar to the one here presented, the Court impliedly held that a proceeding against a member of the military forces of the United States, then in France, for modification of the custody of a child, was valid, but explicitly held that the proceedings should have been postponed until the respondent returned from military service. In this case Federal statutes relative to postponement of legal proceedings against persons in the military and naval services are not invoked or in question.

In this proceeding the majority opinion gives little, if any, force to the continuing jurisdiction of the Circuit Court of Mercer County, and fails to take into account the peculiar nature of the proceedings here considered. The record shows that one of the attorneys here representing respondent was also one of his attorneys in the divorce suit; that respondent's attorneys were present as "spectators", and respondent was present on the day of hearing. It is therefore plain that counsel for respondent had knowledge of the pendency of the proceeding. It is also a valid assumption that respondent had like knowledge.

Coming to the sufficiency of the power of attorney, the majority opinion does not quote a sufficient part thereof to show its full scope. Respondent authorized his mother, as his attorney in fact: "To make, do and transact all and every kind of business of what nature or kind so ever * * *." Likewise the power of attorney authorized the attorney in fact: "To institute, prosecute, defend, compromise, arbitrate and dispose of legal, equitable and administrative hearings, actions, suits, attachments, arrests, distresses or other proceedings or otherwise engage in litigation in connection with the premises; * * * Giving and granting unto my said attorney full power and authority to do and perform all and every act, deed, matter, and thing whatsoever in and about my estate, property, affairs as fully and effectively to all intents and purposes as I might or could do in my own proper person if personally present, the above specially *enumberated* powers being in aid and exemplification of the full, complete, and general power herein granted and not in limitation or definition thereof; and hereby ratifying all that my said attorney shall lawfully do or cause to be done by virtue of these presents." The quoted portions of the power of attorney, make it clear that the majority opinion adopts a narrow construction thereof, holding that such power of attorney did not endow the attorney in fact with capacity to be served with a notice imparting knowledge to respondent that the Circuit Court of Mer-

cer County would exercise its continuing jurisdiction to modify a former decree relative to the custody of his children. Considering that one of the attorneys represented respondent in his divorce suit and also represents him in this proceeding; that said attorney was present in court as a spectator; and that respondent had been or was present on the day of the hearing, I think that the requirement of actual knowledge has been completely met. Furthermore, the provisions of the power of attorney virtually making the attorney in fact the *alter ego* of respondent, are sufficient to endow the attorney in fact with capacity for the service of the notice considered.

The majority opinion has failed to properly distinguish this proceeding from an original suit or action, and has mistakenly applied the rigid rule with reference to the service of process commencing an original suit or action.

A summation of my reasons for affirmance of the decree of the trial court is: In this proceeding counsel for respondent had actual knowledge of the time and place of the hearing on the petition to modify. It is also a valid assumption that respondent likewise knew the purpose and imminency of the hearing. The knowledge of counsel and respondent satisfies the due process provision of our Constitution, Article III, Section 10, as such provision is applied to this proceeding. Service of the notice on the attorney in fact was a valid and sufficient basis for the action of the Circuit Court of Mercer County in the circumstances here shown. Therefore, I would affirm the decree of the Circuit Court of Mercer County.

I am authorized to say that Judge Kenna concurs in this dissent.